UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL HOEFT,<br><br>Defendant. | 4:21-CR-40163-KES<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

Comes now, the above-named Defendant, by and through the undersigned attorney, and in support of his Motion to Dismiss, hereby submits Defendant's Memorandum in Support of Motion to Dismiss.

**I.      Background**

Defendant is charged in Count 2 of a two-count Indictment (DOC 1) with unlawful possession of a firearm in violation of 18 U.S.C. § 922(g) (1) and (9) and 924(a)(2).

18 U.S.C. § 922(g) provides in pertinent part:

(g)    It shall be unlawful for any person-

    (1)    who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; or . . .

    (9)    who has been convicted in any court of a misdemeanor crime of domestic violence,

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce

1

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II.  The Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation."  *Dist. of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

The Supreme Court's decision in *Bruen* set out "the standard for applying the Second Amendment" as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2129–30 (2022).  In so holding, the Supreme Court rejected lower courts' use of means-end scrutiny in Second Amendment cases.[1] *See Id*. at 2125–27 & n.4 (abrogating *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185 (5th Cir. 2012)).  "Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127.

And "when it comes to interpreting the Constitution, not all history is created equal." *Bruen*, 142 S.Ct. at 2136.  Courts must "guard against giving postenactment history more weight than it can rightly bear." *Id.*  Historical evidence from the late nineteenth century and the twentieth century "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id.* at 2154 & n.28; *see also*, *Dobbs v. Jackson Women's Health*

---

[1] In simple terms, "means-end scrutiny" allows "judges to assess the costs and benefits of firearms restrictions" in a Second Amendment analysis.  *Bruen*, 142 S.Ct. 2129.

*Org.*, 142 S. Ct. 2228, 2267 (2022) (stating that "how the States regulated" when a constitutional Amendment was ratified is "the most important historical fact").

## II. Argument

### A. Introduction.

The Second Amendment's plain text covers the conduct proscribed by Section 922(g)(1) and (9), and the prosecution cannot meet its burden of establishing that this application of Section 922(g)(1) and (9) is consistent with the Nation's historical tradition of firearm regulation. Section 922(g)(1) and (9) are therefore unconstitutional as applied.[2]

### B. The Second Amendment's plain text covers possession.

Applying *Bruen's* standard, the Second Amendment's plain text covers the "possess[ion]" of a firearm that Sections 922(g)(1) and (9) criminalize. 18 U.S.C. § 922(g)(1). The term "'[k]eep arms' was simply a common way of referring to possessing arms." *Heller,* 554 U.S. at 583. And Mr. Hoeft is one of "the people" under the Second Amendment's plain text. *See, Heller*, 554 U.S. at 581 (noting that Second Amendment right "belongs to all Americans"); *Id.* at 580 (quoting prior decision describing "the people" as the "class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community"); *see also, e.g.*, U.S. Const. amend. I (using "the people" in Assembly-and-Petition Clause); U.S. Const. amend. IV (using "the people" in Search-and-

---

[2] Following the Supreme Court's decision in *Bruen*, at least two federal courts have ruled that federal firearms restrictions under 18 U.S.C. § 922 are unconstitutional. *See, e.g.*, *United States v. Price*, No. 2:22-CR-97, 2022 WL 6968457 (S.D.W. Va. Oct. 12, 2022) (finding unconstitutional 18 U.S.C. § 922(k), which prohibits possession of a fire- arm with an altered, obliterated, or removed serial number); *United States v. Quiroz*, No. PE:22-CR-104-DC, 2022 WL 4352482 (W.D. Tex. Sept. 19, 2022) (finding unconstitutional 18 U.S.C. § 922(n), which prohibits persons un- der felony indictment from obtaining a firearm). *See also, Antonyuk v. Hochul*, No. 1:22-CV-986-GTS-CFH, 2022 WL 5239895 (N.D.N.Y. Oct. 6, 2022) (granting in part and denying in part temporary restraining order concerning several New York state firearm restrictions);

Seizure Clause).³  *Bruen* reiterates that the Second Amendment guarantees to "all Americans" the right to keep and bear arms.  142 S. Ct. at 2156 (quoting Heller, 554 U.S. at 581).

Because the Second Amendment's plain text covers Mr. Hoeft's conduct, the Second Amendment "presumptively protects" that conduct.  *Bruen*, 142 S. Ct. at 2129–30.

C. **Application of Section 922(g)(1) and (9) are not consistent with the Nation's historical tradition of firearm regulation**.

The prosecution cannot meet its burden of establishing that Sections 922(g)(1) or (9), as applied to Mr. Hoeft, are "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30.  Indeed, courts have recognized that "the federal felony firearm possession ban, 18 U.S.C. § 922(g)(1), 'bears little resemblance to laws in effect at the time the Second Amendment was ratified,' as it was not enacted until 1938, was not expanded to cover non-violent felonies until 1961, and was not re-focused from receipt to possession until 1968." *Nat'l Rifle Ass'n of Am.*, 700 F.3d at 196, abrogated by *Bruen*, 142 S. Ct. 2111 (quoting *United States v. Booker*, 644 F.3d 12, 23–24 (1st Cir. 2011)).

Then-Judge Barrett and other jurists have likewise concluded that "Founding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons." *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting); *see, e.g., Id.* at 453–64

---

³ *See Heller*, 554 U.S. at 580–81 (discussing meaning of "the people").  In context, the *Heller* Court said elsewhere in its opinion only that, "*whatever else [the Second Amendment] leaves to future evaluation*, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  *Heller*, 554 U.S. at 635 (emphasis added). *Bruen* did address the full scope of the term "the people," because it was "undisputed" in that case that the petitioners were "part of 'the people'" as "ordinary, law-abiding, adult citizens." *Bruen*, 142 S. Ct. at 2134 (citing *Heller*, 554 U.S. at 580).  "Nothing in the Second Amendment's text draws [that] distinction with respect to the right to keep and bear arms." *See Id.*

4

(surveying history); *Heller v. Dist. of Columbia,* 670 F.3d 1244, 1253 (D.C. Cir. 2011) ("[S]tates did not start to enact [felony-based prohibitions on possession] until the early 20th century."); *Folajtar v. Att'y Gen. of U.S., 980 F.3d 897*, 914 (3d Cir. 2020) (Bibas, J., dissenting) ("[T]he issue of disarming felons is open.  Precedent does not settle its historical limits.  Rather, we must analyze the history ourselves and ask: Were all felons, dangerous and nondangerous alike, equally excluded from the Second Amendment? No, they were not."); *United States v. McCane,* 573 F.3d 1037, 1048 (10th Cir. 2009) (Tymkovich, J., concurring) ("[M]ore recent authorities have not found evidence of longstanding dispossession laws.").

Numerous scholars, too, have concluded that "no colonial or state law in eighteenth-century America formally restricted the ability of felons to own firearms." *See*, e.g., Larson, supra, at 1374; C. Kevin Marshall, *Why Can't Martha Stewart Have A Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 698 (2009) (observing that such prohibitions have their origins in the twentieth century).

With respect to Section 922(g)(1), the United States has agreed with the premise that Section 922(g)(1) "is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified."  U.S. Br. at *27–28, *United States v. Pettengill*, No. 10-2024, 2011 WL 1977759 (1st Cir. May 13, 2011) (quoting *United States v. Booker*, 644 F.3d 12, 23–24 (1st Cir. 2011)).  In briefings, the United States has stated: "As for convicted criminals, Colonial societies do not appear to have categorically prohibited their ownership of firearms." *E.g.*, U.S. Br. at *25, *United States v. Staten*, No. 10-5318, 2011 WL 1542053 (4th Cir. Apr. 25, 2011) (citing *Marshall, supra*, at 696–728).

Against that backdrop, the prosecution cannot meet its burden of establishing that application of Sections 922(g)(1) and (9) are "consistent with the Nation's historical tradition of

firearm regulation." *Bruen*, 142 S. Ct. at 2129–30.  Indeed, to uphold application of both Sections 922(g)(1) and (9), the prosecution must establish a historical "tradition"—a robust record of regulations demonstrating an accepted and enduring restriction on the Second Amendment right.  *See, e.g., Id*. at 2156 (demanding a "broad tradition," not "outlier" regulations).[4]  And because both Sections 922(g)(1) and (9) "address[] a general societal problem[s] that ha[ve] persisted since the 18th century," Bruen instructs that "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id*. at 2131.  So too "if earlier generations addressed the societal problem, but did so through materially different means." *Id*.  The inquiry may also turn upon "how" and "why" historical regulations burdened the Second Amendment right. *Id*. at 2132–33.

Because the prosecution cannot establish the requisite historical tradition, Sections 922(g)(1) and (9) are unconstitutional as applied to Mr. Hoeft.

### D. *Bruen*'s holding governs.

*Bruen's* holding must prevail over *Heller's* dictum.  The Supreme Court in *Heller* did "not undertake an exhaustive historical analysis" when it stated—in dictum, and without citation—that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," which the Court described in a footnote as

---

[4] "[I]n our adversarial system, we follow the principle of party presentation. . . . Courts are thus entitled to decide a case based on the historical record compiled by the parties." *Bruen*, 142 S. Ct. at 2130 n.6 (quotation marks omitted).

"presumptively lawful." *Heller*, 554 U.S. at 626–27 & n.26;[5] *see McDonald v. City of Chi.*, 561 U.S. 742, 786 (2010) (plurality) (same); *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (quoting same). Courts have described this language as "[d]icta in *Heller*." *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); accord, e.g., *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 686–87 (6th Cir. 2016) (en banc*); United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010).

*Bruen* "did not attempt to bolster [the] reasoning"—or lack of it— underlying Heller's dictum. *See Dobbs*, 142 S. Ct. at 2271. Instead, *Bruen* now holds that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 142 S. Ct. at 2126 (emphasis added). Moreover, the Court holds that "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*. "Only if" the government meets its burden, the Court holds, may a court uphold a regulation as constitutional. *Id*. *Bruen's* holding must prevail over *Heller's* footnote-consigned dictum. *See Heller*, 554 U.S. at 625 n.25 ("It is inconceivable that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a footnoted dictum in a case where the point was not at issue and was not argued.").

### III. Conclusion.

*Bruen* clearly rejected means-end scrutiny. *Bruen*, 142 S. Ct. at 2125–27. *Bruen* now instructs that it is the government's burden to "affirmatively prove" that any regulation is "part

---

[5] The parties in *Heller* did not brief the historical background for *Heller*'s "presumptively lawful" measures. The respondent sought to justify those measures by arguing they would satisfy means-end scrutiny—a justification that *Bruen* now forecloses. *See* Respondent's Br. at 57, *Dist. of Columbia v. Heller*, No. 07-290 (Feb. 4, 2008); *Bruen*, 142 S. Ct. 2125–27.

7

of the historical tradition that delimits the outer bounds of the right to keep and bear arms," which the United States cannot do here. *Bruen*, 142 S. Ct. at 2127. Under *Bruen's* "standard for applying the Second Amendment," the Second Amendment's plain text covers Mr. Hoeft's possession of a firearm. The prosecution cannot meet its burden of demonstrating that this application of either Section 922(g)(1) or (9) are "consistent with the Nation's historical tradition of firearm regulation." Section 922(g)(1) and (9) are unconstitutional as applied.

Dated this 17th day of November, 2022.

CREW & CREW, P.C.

*/s/ Rick Ramstad*

RICK L. RAMSTAD  
141 N. Main Avenue, Suite 706  
Sioux Falls, SD  57104  
(605) 335-5561  
Attorney for Defendant
