UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL HOEFT,<br><br>Defendant. | 4:21-CR-40163-KES<br><br><br>**ORDER DENYING MOTION TO DISMISS** |

Defendant, Michael Hoeft, moves the court to dismiss Count 2 of a two-count indictment, charging him with unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and (9). Docket 69. The government opposes the motion. Docket 79.

**PROCEDURAL HISTORY**

On December 7, 2021, Hoeft was indicted on two counts. Count 1 charges possession with intent to distribute a controlled substance, and Count 2 charges unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and (9). Docket 1. Sections 922(g)(1) and (9) prohibit the possession of a firearm by anyone convicted of a felony or of a misdemeanor domestic violence offense. Hoeft moves to dismiss Count 2, arguing that the statute in question is unconstitutional under the standard articulated by the Supreme Court in its recent opinion in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 142 S.Ct. 2111 (2022). Docket 69; Docket 70 at 2-6. The government opposes the motion,

contending that the statute is constitutional. Docket 79 at 1-2. Hoeft later moved to supplement his motion. Docket 83. The court granted the motion (Docket 84), and Hoeft filed further briefing, arguing that he did not have the knowledge of his prohibited status as required by *Rehaif v. United States*, 139 S.Ct. 2191 (2019) to be convicted under 18 U.S.C. § 922(g)(9). Docket 85 at 1. The government filed supplemental briefing, again opposing the motion. Docket 88.

## LEGAL DEVELOPMENTS REGARDING FIREARMS

The Second Amendment of the United States Constitution was construed during the twentieth-century as a right held by the militia and not the individual. *See United States v. Miller*, 307 U.S. 174, 178-79 (1939). In *District of Columbia v. Heller*, 554 U.S. 570 (2008), however, the Supreme Court held that the Second Amendment of the United States Constitution "conferred an *individual* right to keep and bear arms." *Heller*, 554 U.S. at 595 (emphasis added). *McDonald v. City of Chicago, Ill.* then incorporated that holding to the states via the Fourteenth Amendment. *See* 561 U.S. 742, 750 (2010).

Following the Supreme Court's decisions in *Heller* and *McDonald*, the Courts of Appeals developed a two-step test to evaluate Second Amendment claims. *Bruen*, 142 S.Ct. at 2125-26 (2022). "At the first step, the government may justify its regulation by establishing that the challenged law regulates activity falling outside the scope of the right as originally understood[.]" *Id.* at 2126 (citations omitted). Activity which falls beyond the original scope of the amendment was "categorically unprotected[,]" and the analysis could thus end.

2

*Id.* If the activity was protected, the court proceeded to the second step, where "courts often analyze[d] how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Id.* (citations omitted). Most courts considered the right to possess arms for self-protection in the home to be the core of the right. *See Gould v. Morgan*, 907 F.3d 659, 671 (1st Cir. 2018).

In *Bruen*, the Supreme Court examined the test developed after *Heller* and found that it had "one step too many." 142 S.Ct. at 2127. According to the test articulated in *Bruen*,

> [w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendments 'unqualified command.'

*Id.* at 2129 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961)).

The decision in *Bruen* has prompted significant legislation concerning existing gun laws, including numerous challenges to 18 U.S.C. § 922(g). *See United States v. Price*, No. 2:22-CR-00097, 2022 WL 6968457 (S.D.W. Va. Oct, 12, 2022); *United States v. King*, No. 21-CR-255, 2022 WL 5240928 (S.D.N.Y. Oct. 6, 2022); *United States v. Charles*, No. MO:22-CR-00154, 2022 WL 4913900 (W.D. Tex. Oct 3, 2022); *United States v. Collette*, No. MO:22-CR-00121, 2022 WL 4476790 (W.D. Tex. Sept. 25, 2022); *United States v. Hill*, No. 21CR107, 2022 WL 4361917 (S.D. Cal. Sept. 20, 2022); *United States v.*

3

*Cockerham*, No. 5:21-CR-6-DCB-FKB, 2022 WL 4229314 (S.D. Miss. Sept. 13, 2022); *United States v. Burrell*, No. 21-20395, 2022 WL 4096865 (E.D. Mich. Sept. 7, 2022); *United States v. Ingram*, No. CR 0:18-557-MGL-3, 2022 WL 3691350 (D.S.C. Aug. 25, 2022). The Eighth Circuit has yet to consider 18 U.S.C. §§ 922(g)(1) or (9) in the aftermath of the *Bruen* decision.

## DISCUSSION

Hoeft argues that 18 U.S.C. §§ 922(g)(1) and (9) are unconstitutional under the test articulated by *Bruen* because the conduct at issue is covered by the plain text of the Second Amendment and the historical tradition of firearm regulation does not support the regulation. Docket 70 at 2-6.

Plaintiff objects and asserts that the statute is constitutional. Plaintiff claims that the *Bruen* holding does not alter Eighth Circuit precedent upholding the constitutionality of 18 U.S.C. §§ 922(g)(1) and (9). Docket 79 at 7. In the alternative, the government asserts that even if the court were to find that *Bruen* overrules previous Eighth Circuit caselaw, the historical tradition of firearm regulation supports the statute. *Id.* at 8-9.

Hoeft does not make clear whether the challenge to 18 U.S.C. §§ 922(g)(1) and (9) is facial or as applied and makes apparent arguments for both at various points throughout the briefing. As such, the court will consider both a facial and as applied challenge, beginning first with a facial challenge to the law.

I.  **Facial Challenge**

   A.  **Eighth Circuit and Supreme Court Precedent**

      1.  **18 U.S.C. § 922(g)(1)**

After *Heller* but before *Bruen*, the Eighth Circuit consistently dismissed facial challenges to 18 U.S.C. § 922(g)(1), which prohibits the possession of a firearm by convicted felons. *See United States v. Joos*, 638 F.3d 581, 586 (8th Cir. 2011), *cert. denied*, 565 U.S. 1184 (2012); *see also United States v. Roach*, 470 F.Appx. 537, 538 (8th Cir. 2012); *United States v. Aiello*, 452 Fed.Appx. 699, 700 (8th Cir. 2012). Though Hoeft argues that these cases are no longer good law, the district court remains bound by circuit court precedent unless an intervening Supreme Court case "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *United States v. Green*, 722 F.3d 1146, 1150 (9th Cir. 2013) (quoting *Miller v. Gammie*, 335 F.ed 809, 900 (9th Cir. 2003)) (emphasis omitted); *see also United States v. Smith*, 460 F.Supp.3d 783, 792 (E.D. Ark. 2020).

The Supreme Court in *Bruen* specified that its holding is "consistent with *Heller*[,]" 142 S.Ct. at 2122, which in turn found that "nothing in [this] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" *Heller*, 554 U.S. at 626. The majority in *Bruen* also remarked that its holding applies specifically to "law-abiding citizens" and that screening measures "requir[ing] applicants to undergo a background check" should not be overturned by the decision. *See* 142 S.Ct. at 2134, 2138 n. 9. If

5

criminal history could not be used to determine eligibility for gun ownership, then these remarks would be nonsensical; the Court clearly envisioned a continued system in which past criminal history could restrict gun purchase or possession. In fact, five out of the nine justices in *Bruen* went so far as to explicitly endorse such restrictions. *See id.* at 2162, 2189;[1] *see also United States v. Siddoway*, No. 1:21-CR-00205, 2022 WL 4482739, at *1-2 (D. Idaho Sept. 27, 2022). As such, *Bruen* is not irreconcilable with previous Eighth Circuit decisions and the district court in this case is still bound by Eighth Circuit precedent to uphold the constitutionality of 18 U.S.C. § 922(g)(1).

### 2.  18 U.S.C. § 922(g)(9)

The same reasoning that upholds the constitutionality of 18 U.S.C. § 922(g)(1) also applies to § 922(g)(9). Those convicted of domestic violence are not the "law-abiding citizens" that *Bruen* meant to protect, and the Supreme Court has consistently recognized and applied the prohibitions on possession of firearms by those convicted of domestic violence offenses in the aftermath of *Heller*. *See Voisine v. United States*, 579 U.S. 686, 688 (2016); *United States v. Hayes*, 555 U.S. 415, 418 (2009). Because *Bruen* is reconcilable with these

---

[1] Justice Kavanaugh underscored in his concurrence, joined by Chief Justice Roberts that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" *Bruen*, 142 S.Ct. at 2162 (quoting *Heller*, 554 U.S. at 626). In his dissent, Justice Breyer, joined by Justices Sotomayor and Kagan, stated that "[l]ike Justice Kavanaugh, [he] understand[s] the Court's opinion . . . to cast no doubt on t[he] aspect of *Heller*'s holding" upholding the prohibition of possession of firearms by felons. *Id.* at 2189.

cases, this court remains bound by Supreme Court precedent and must uphold the constitutionality of 18 U.S.C. § 922(g)(9).

### B.   *Bruen* Analysis

But even if this court were to consider Hoeft's argument without being bound by prior precedent and engage in the *Bruen* analysis, it would still conclude that Hoeft failed to articulate a viable facial challenge to either 18 U.S.C. §§ 922(g)(1) or (9). Though the court agrees with Hoeft that the conduct at issue - possession of a firearm - is covered by the plain text of the Second Amendment, the historical tradition of firearm regulation clearly supports a ban on possession by felons and those convicted of domestic violence. *See Charles*, 2022 WL 4913900, at *2 ("In any event, *Bruen*'s first step asks a strictly textual question with only one answer: the Second Amendment's plain text covers possession of a firearm.")

As Judge Frizzell of the Northern District of Oklahoma described, the legislature has long disarmed those who violated the law. *See United States v. Coombes*, No. 22-CR-00189, --- F.Supp. ---, 2022 WL 4367056, at *5-10 (Sept. 21, 2022). Beginning in the colonial period, attainder statutes provide an illuminating historical analogue. *Id.* at *5; *see also Bruen*, 142 S.Ct. at 2133 (requiring "a well-established and representative historical analogue, not a historical twin[]") (emphasis omitted). These statutes deprived the "disaffected" and "delinquent[]" of various rights, including the right to bear arms. *Coombes*, 2022 WL 4367056, at *5. Similarly, in the province of New York, "persons convicted of a felony could not own property or chattels[,]" thus precluding

7

them from owning firearms. *Id.* at *6. Both of these restrictions reflected the concept in "classical republican political philosophy" that "a right to arms was inextricably and multifariously tied to that of the 'virtuous citizen.'" *Id.* at *5 (citing Glenn Harland Reynolds, *A Critical Guide to the Second Amendment*, 62 TEN. L. REV. 461, 480 (1995)).

As the government notes, proposed amendments and statutes from the founding era demonstrate a continued understanding of the Second Amendment as restricted to law abiding citizens. *See* Docket 79 at 8. At the Massachusetts Ratifying Convention, Samuel Adams "would have forbidden Congress to prevent 'the people of the United States, *who are peaceable citizens,* from keeping their own arms.'" *Bena*, 664 F.3d at 1183 (emphasis in original) (citing Journal of Convention: Wednesday February 6, 1788, *reprinted in Debates and Proceedings in the Convention of the Commonwealth of Massachusetts Held in the Year 1788*, at 86 (Boston, William White 1856)). In Pennsylvania, Anti-Federalists proposed that the people shall not be disarmed "unless for crimes committed[.]" *Coombes*, 2022 WL 4367056 at *6. Though these proposals were not adopted, they remain persuasive evidence of "*the public understanding*" and the understanding of the public of the right at the time of enactment. *Bruen*, 142 S.Ct. at 2128, 2136 (citation omitted).

Further, the state legislatures disarmed those it considered unwilling to follow the law. For example, "[i]n 1787, the Massachusetts legislature passed a law setting out the terms for pardons by the governor for persons who had been involved in Shay's rebellion against the state in the previous year." Saul

8

Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 FORDHAM L. REV. 487, 507 (2004). The rebels were generally permitted to seek a pardon from the governor, but had to take an oath of allegiance to the state and to "deliver his arms to the state for a period of three years." *Id.* at 507-08. Pennsylvania similarly disarmed those unwilling to proclaim their loyalty to the state under the Test Acts, though without a comparable time limit. Saul Cornell, *"Don't Know Much About History" the Current Crisis in Second Amendment Scholarship*, 29 N. KY. L. REV. 657, 670 (2002).

Taken together, this history demonstrates what the Eighth Circuit has already articulated: that "[s]cholarship suggests historical support for a common-law tradition that permits restrictions directed at citizens who are not law-abiding and responsible." *Bena*, 664 F.3d at 1183. The historic tradition of firearm regulation thus supports the constitutionality of statutes such as 18 U.S.C. § 922(g)(1) and (9), which prohibit criminal offenders from possessing firearms. Hoeft's facial challenge is denied for this reason. *See also Coombes*, 2022 WL 4367056, at *10 (upholding 18 U.S.C. § 922(g)(1) against a *Bruen* challenge); *United States v. Nutter*, No. 2:21-CR-00142, --- F.Supp.3d ---, 2022 WL 3718518, at *8 (S.D. W. Va. Aug. 29, 2022) (upholding 18 U.S.C. § 922(g)(9) against a *Bruen* challenge).

## II.   As Applied Challenge

Hoeft also challenges the constitutionality of 18 U.S.C. §§ 922(g)(1) and (9) as applied to him. He argues that the regulations are historically

9

unsupported and that his prior felony history does not render him so dangerous as to justify the infringement of his Second Amendment right under 18 U.S.C. § 922(g)(1). Docket 80 at 5-8. Hoeft also argues in his supplemental briefing that he was unaware of his prohibited status due to his domestic violence conviction, and thus cannot be convicted under 18 U.S.C. § 922(g)(9). Docket 85 at 5. The government asserts that 18 U.S.C. § 922(g)(1) is constitutional as applied to Hoeft because Hoeft fails to allege facts which "differentiate him[] from any other person who is subject" to the statutes and because the statute is supported by the historic record. Docket 79 at 3, 7-8. The government further argues that any challenge to 18 U.S.C. § 922(g)(9) is premature because it relies on factual questions to be addressed by the jury. *See* Docket 88 at 2.

### A.    Challenge to 18 U.S.C. § 922(g)(1)

Because the court has already found that 18 U.S.C. §§ 922(g)(1) is supported by the historic tradition, the discussion will focus on whether Hoeft has demonstrated that his criminal history is "insufficient to justify the challenged regulation of [his] Second Amendment rights." Docket 80 at 5 (citing *United States v. Adams*, 914 F.3d 602, 605 (8th Cir. 2019)).

To succeed on an as applied challenge to the constitutionality of a statute under the Second Amendment, the movant must demonstrate not that a law is unconstitutional as written, but "that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Adams*, 914 F.3d at 605 (citation omitted). In the case of Second

Amendment challenges, the Eighth Circuit requires the defendant to "present[] facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections." *United States v. Woolsey*, 759 F.3d 905, 909 (8th Cir. 2014) (quoting *United States v. Brown*, 436 Fed. App'x. 725, 726 (8th Cir. 2011)) (internal quotations omitted).[2] Those facts should demonstrate that the defendant is "no more dangerous than a typical law-abiding citizen" for the challenge to succeed. *United States v. Hughley*, 691 Fed. App'x. 278, 279 (8th Cir. 2017) (quoting *Brown*, 436 Fed. App'x at 726).

Hoeft has two felony convictions in addition to his conviction for domestic violence. *See* Docket 80 at 7-11. He addresses both of his felony convictions in arguing that he is not so dangerous as to justify government interference with his Second Amendment rights. *Id.*

Hoeft first argues that his conviction for first degree manslaughter does not demonstrate dangerousness because the offense occurred "more than thirty years ago" and "does not fall within the established definition of a 'violent felony' under modern federal jurisprudence." *Id.* at 7 (quoting 18 U.S.C. § 924).

---

[2] Though Hoeft dismisses this standard and argues that pre-*Bruen* holdings are inapplicable, as explained *supra* 5-6, this court remains bound by all Eighth Circuit caselaw not incompatible with recent Supreme Court holdings. Because nothing in *Bruen* suggests that it would overrule the Eighth Circuit's focus on the nature of the conviction in as-applied challenges, the court applies this framework. *See United States v. Hammond*, No. 422CR00177SHLHCA, 2023 WL 2319321 at *7 (S.D. Iowa Feb. 15, 2023) ("Beyond [shifting] the burden of proof [to the government], however, it does not appear that *Bruen* disturbed the Eighth Circuit's focus in an as-applied challenge on the nature of the conviction that gave rise to the defendant's disqualifying status.")

Second, Hoeft contends that his conviction for "Unauthorized Possession of Substances with Intent to Make a Destructive Device" does not demonstrate dangerousness because the offense does not have a use of force or use of explosive element. *Id.* at 8. He also asserts that the offense is not inherently violent and involved only "cut-off matchheads scattered on the floor[.]" *Id.*

Neither of these arguments demonstrates that Hoeft is "no more dangerous than the average law-abiding citizen." *Hughley*, 691 Fed. App'x. at 279. Instead, Hoeft mistakenly focuses his analysis on whether the crimes for which he was convicted are violent under the categorical approach to interpreting the Armed Career Criminal Act. Docket 80 at 7-9; *see Stokeling v. United States*, 139 S.Ct. 544, 550-55 (2019) (applying categorical approach to robbery statute). Whether a crime is categorically violent is a different inquiry from whether it is indicative of dangerousness. For example, the Supreme Court has found that crimes with a recklessness mens rea cannot be considered categorically violent under the Armed Career Criminal Act because the Act's definition of violence requires intentional action. *See Borden v. United States*, 141 S.Ct. 1817, 1825 (2021). But in analyzing dangerousness, the Eighth Circuit looks not to mens rea but to the potential for harm to another person. *See Hughley*, 691 Fed. App'x at 279 (finding that nonviolent prior felonies still demonstrated dangerousness). Manslaughter by its very definition involves the loss of human life, the greatest possible harm. *See* SDCL §§ 22-16-1, 22-16-15. Thus, the court finds that a conviction for manslaughter is adequate justification to support a restriction on Second Amendment rights.

"Unauthorized Possession of Substances with Intent to Make a Destructive Device" involves a similar, if lesser, potential harm to another person. Under SDCL § 22-14A-13, an element of the offense is "the intent to make a destructive device without first obtaining a permit[.]" Destructive devices pose a substantial risk to human safety, and the failure to procure a permit demonstrates a lack of adequate precaution. The court finds conviction under this offense is sufficient to support a restriction on Second Amendment rights.

Hoeft provides no facts to the court that would mitigate his specific and personal culpability for these felonies. *See* Docket 80 at 7-9. Though Hoeft's manslaughter conviction may be remote in time, the nature of the offense is sufficiently serious to justify continuing firearm restriction. Additionally, Hoeft does not explain how the presence of matchheads in his second conviction lessens the severity of the offense. Because Hoeft cannot demonstrate that he is not more dangerous than the average law-abiding citizen, his as-applied challenge to 18 U.S.C. § 922(g)(1) is denied.

B.    **Challenge to 18 U.S.C. 922(g)(9)**

Hoeft argues in his supplemental briefing that 18 U.S.C. § 922(g)(9) is unconstitutional as applied to him because his underlying conviction arose from a constitutionally deficient guilty plea and because he was unaware of his status as a prohibited person. Docket 85 at 4-9; Docket 89 at 3-7. The government argues that federal court is an improper venue for a collateral attack on Hoeft's underlying conviction and that the question of Hoeft's

subjective knowledge of his status is a question of fact for the jury. Docket 88 at 2-5.

### 1. Collateral Attack on Underlying Conviction

The Eighth Circuit has held that a defendant cannot bring a collateral attack on an underlying state court conviction in a federal court prosecution under 18 U.S.C. § 922. *See Bena*, 664 F.3d at 1185; *see also Lewis v. United States*, 445 U.S. 55, 56 (1980) (denying defendant ability to collaterally attack underlying conviction under predecessor statute to 18 U.S.C. § 922(g)(1)). Hoeft attempts to distinguish his case from precedent by arguing that, under 18 U.S.C. § 922(g)(9), a defendant may only be convicted if he was "represented by counsel in the [underlying domestic violence] case, or knowingly and intelligently waived the right to counsel[.]" Docket 85 at 6 (quoting 18 U.S.C. § 921(a)(33)(B)(i)(I). But Hoeft does not argue that he was unrepresented; he instead contests the quality of his representation. As such, this court will not entertain arguments regarding the underlying validity of Hoeft's domestic violence conviction. If Hoeft wishes to challenge the validity of the conviction, the appropriate venue is in the court of conviction.

### 2. Knowledge of Prohibited Status

The Supreme Court held in *Rehaif v. United States* that to support a conviction under 19 U.S.C. § 922(g), "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S.Ct. 2191,

2200 (2019). In this case, the government must show that Hoeft was aware of his conviction for domestic assault.

Hoeft contends that he was unaware of his prohibited status due to his domestic violence conviction and thus cannot be convicted under 18 U.S.C. 922(g)(9). Docket 85 at 7-9. To support his argument, Hoeft introduces documents and transcripts from his underlying conviction. *See* Docket 85-1, 85-2, 85-3. Hoeft argues that these documents show that he believed he was pleading to a non-domestic assault, which would not make him prohibited from firearm possession under 18 U.S.C. § 922(g)(9).

The government argues that there is evidence Hoeft was aware of his status and that this dispute is an issue of fact to be decided by the jury. To support this argument, the government submitted Hoeft's petition to plead guilty, which he signed and which lists the charge pleaded to as "DVSA." Docket 88-1. The government contends that this acronym stands for "domestic violence simple assault." Docket 88 at 3. The government also argues that testimony from Hoeft's attorney on the underlying case would "likely . . . show additional evidence regarding his knowledge of the charge." *Id.* at 4.

Under Federal Rule of Criminal Procedure 12(b)(1), the parties may "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Pretrial resolution is appropriate only when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60 (1969). But when "an issue is 'inevitably

15

bound up with evidence about the alleged offense itself[,]' " then pretrial determination is inappropriate, and the issue must be presented to the jury. *United States v. Turner*, 842 F.3d 602, 605 (8th Cir. 2016) (quoting *United States v. Grimmett*, 150 F.3d 958, 962 (8th Cir. 1998)). Here, the fact at issue is an essential element of the offense. *See Rehaif*, 139 S.Ct. 2200. Both parties have submitted evidence directly related to this fact. *See* Docket 85-1, 85-2, 85-3, 88-1. As such, the court cannot "rule on [Hoeft's] as applied constitutional challenge without resolving factual issues related to his alleged offense[.]" *Turner*, 842 F.3d at 605. Hoeft's as-applied challenge to 18 U.S.C. 922(g)(9) is denied as premature; Hoeft retains the right to raise any argument about his knowledge of the underlying conviction for domestic assault to the jury.

## CONCLUSION

Because 18 U.S.C. §§ 922(g)(1) and (9) are supported by this nation's historic tradition of firearm regulation, the court denies Hoeft's facial challenge to the statutes under *Bruen*. Additionally, because Hoeft has not demonstrated that he is no more dangerous than the average law-abiding citizen, his facial challenge to 18 U.S.C. § 922(g)(1) is denied. Lastly, Hoeft's as-applied challenge to 18 U.S.C. § 922(g)(9) is denied because his knowledge of the underlying

misdemeanor conviction for domestic assault is a question of fact for the jury. Thus, it is

ORDERED that Hoeft's motion to dismiss Count 2 of the Indictment (Docket 69) is denied.

Dated March 17, 2023.

                                         BY THE COURT:

                                         /s/ *Karen E. Schreier*
                                         KAREN E. SCHREIER
                                         UNITED STATES DISTRICT JUDGE